Hi everyone. The first case this morning is number 2010-1096, Biopolymer v. Immunocorp. Mr. Schwebert? Schwebert. Mr. Schwebert, would you tell us what's at stake in this case, since your opponent is not opposing your position? This is Biopolymer Engineering, which goes by the name Biothera in all of the briefing and evidence. Appeal of a summary judgment determination in favor of Biotech and Immunocorp on the 719 patent. So the district court judge granted summary judge, denied Biothera's motion for summary judgment. We understand. We just want to know what the stakes are depending on how this appeal goes. Well, from Biothera's perspective, the proper outcome is to enter summary judgment in Biothera's favor and send the case back down for a determination of damages for Immunocorp and Biotech's Immupet and Immutol products. So the stakes would be a district court trial on damages, which would... But the settlement agreement says there's a free license. The settlement agreement says that as to Immutol, once this court reverses, there's then a license without a royalty payment for Immutol going forward. It's, in fact, an anti-injunction license agreement. If it says there's a royalty-free license, you're saying that that, nonetheless, the damages would be due... Up until the date that this court reverses the district court decision. And the product has been on... That's a significant number, is the product in commerce? The product continues to be sold in the United States by Immutol, or by Immunocorp. I'm talking about the future. That's settled. I'm talking about the past. You say that there are past damages. There are past damages. And that would depend on our decision today? Yes. Immupet, one of the two products, isn't subject to the future anti-injunction license. So there isn't any dispute looking at the settlement agreement that as to Immupet, no license is ever granted, even when this court reverses. As to Immutol, if this court reverses, that date would, in essence, become the end of the damages period. Because then we would look at all of the sales that happened up until the grant of the license. And those would be subject to the damages determination. So you're saying, even though the settlement agreement didn't mention that past damages were still alive, that that's understood? The settlement agreement is silent as to any retroactivity. Biothera's view is absent. There's no waiver. There's no release. There's a free license. Isn't it implied that there's a free license? Going forward. How do you say that? Well, it says that the conditional event for the grant of the license is this court reversing. So on the date that this court enters its order reversing and entering, hopefully, summary judgment in Biothera's favor, on that day, the license is granted. There's nothing in there. You have an appeal here from a summary judgment of not infringement, right? Yep. And it hangs on the interpretation of a claim deciding a particle size of 1.0 microns or less, right? About 1.0. That's correct. You want it interpreted more broadly. There's actually two ways to reach the same result. The district court construed the word having as being a closed term so that the particle size after the word having had to be exclusively 1.0. But if we look at the specification, there is nothing there that refers to particle sizes having more than 1.0 microns. In fact, the specification says prefers 0.2 microns, which is a good deal less. And your prosecution distinguished a reference that had much larger. So why was the trial court in error? Okay, let me break it down into pieces. The specification uses the term fine grind to refer to its, I'll call it submicron, about 1.0 micron particles. And what the specification discloses is that its preferred embodiment is a nutritional supplement, which is just that, about 1.0. But twice in the specification, it talks about how the nutritional supplement can have both the fine grind and the larger non-ground particle sizes. And is there any number referring to particle size greater than 1.0 microns in the spec, which is the basis for interpreting claims? It distinguishes prior art disclosures, which would obtain a beta-glucan, which is larger, from what its preferred embodiment, which uses the term fine grind, or a particle reduction method, to obtain something which is about 1.0 or less. So it distinguishes everything which is above 1.0 as the non-ground larger particle size. It doesn't put a number, it doesn't say that the average particle size is 4 to 6 microns. It simply distinguishes the larger non-ground particle, which are the ones that are not ground, from the ones that are ground. And then twice it says both the non-ground larger particles and the fine grind smaller particles can be put together. Where are the two examples? Yeah, it's column 2, line 66, both the fine grind and non-ground substantially purified beta-1,3-glucan, more preferably the fine grind, glucan described herein, may be administered orally. And then again at column 3, starting at line 17, both the fine grind and the non-ground substantially purified beta-1,3-glucan product may be administered to animals as a significant nutritional supplement for the purpose of improving both growth and survival in these animals, as well as enhancing growth rate and feed efficacy. Where is the particle size for the non-ground material? In column 3, beginning about line 2, it talks about, it is believed that upon oral administration, the smaller or finer particle sized glucan, that's the about 1.0, is more quickly dissolved in the gastrointestinal tract and consequently more readily absorbed as compared to non-ground glucan product which comprises larger sized glucan particles. But the specification says that after you sieve out the larger particles, you grind them again. The invention was not the use of the glucan, it was the particle size. The invention was a combination of larger particle size and smaller particle size. A combination? That's what the specification talks about. And when it used a comprising claim for what the beta-glucan... But you argued with the examiner that the invention was the small, finely ground particle. The prosecution history discussion with the examiner was about the fact that the prior didn't disclose any of the non-ground. This is not a case where the patent holder is trying to read it on a product that does not have the submicron or the about 1.0. Everybody admits this product has the about 1.0. The question is, can it have both that and more? What the district court said was no, it has to be just the stuff below 1.0 micron. What the specification discloses... Is your construction such that if it has just one or two glucans that are 1.0 microns or less, then it infringes? Yes. So it could have a million glucans that are above 1.0, but if one or two of them in there happen to be smaller than 1.0, there's infringement? Yes. If the nutritional supplement contains glucan particles that are below 1.0 micron, about 1.0, it infringes. The fact that it has additional particle sizes which are larger than 1.0 micron doesn't make it not infringing. The court construed the term having, but because we were never given a chance to argue, it ignored the comprising term that appears before the term having. So even if this court were to affirm the construction of the district court, which is closed, I think that's contrary to the specification. But even if this court were to do it, their product still infringes. The reason why their product infringes is because you would still have particle size about 1.0 micron, 1.0 micron and less. In addition, because of the comprising term, you would have water and soluble yeast, beta-glucan, along with whatever else is in their nutritional supplement, which leads to infringement. There's nothing. Because of the earlier comprising term, even if you close off having, that element is still satisfied. There are two comprising. There are. Comprising water-soluble yeast cell wall extract, or something else. That's the meaning of comprising. Yep. Then comprising substantially purified beta-glucans, or something else. And then having a particle size which identifies the particle size. It's water-soluble yeast cell extract. Those are three terms there, each of which you're trying to run. No. BioThera is only seeking an open construction. Well, we are seeking an open construction of having. Assuming having is closed, comprising, the second comprising would mean you have water-soluble yeast cell wall extract. Comprising purified beta-glucans, having, closed, a particle size about 1.0 micron. And, because it's a comprising term, substantially purified beta-1,3-glucans, not having the narrow particle size. That second comprising means that the water-soluble yeast cell wall extract can have more than just the closed, if that's the construction that's applied, 1.0 micron. This is a preferred embodiment issue on the term having. So you're not saying that the really effective product is the finely ground, the micronized stuff, with a few chunks that kind of pass through, that's larger than 1 micron. Your response to Judge Moore's question was that it can all be chunks, as long as you have just a little bit of the micronized stuff. What was unique about this patent was a nutritional supplement with a particle from the beta-glucan that had a size below 1.0 micron. Even if it's only 1 or 2 percent of the total glucan? Yes. And how do you resolve that in the light of the arguments during prosecution? Because during... You mentioned was the micronized and the solubility and the absorbability. The issues during prosecution was that the prior art didn't disclose anything below 1.0 micron. It didn't disclose anything about the particle size. It didn't teach a small particle size. There was no disclosure of a small particle size or that that product contained a small particle size. So the applicant distinguished himself by the prior art by saying, ours contains a submicron, a small particle size. But the applicant didn't say, ours contains exclusively a submicron, it contains only a submicron. Rather, as disclosed in the original application, the applicant was saying, ours is both. Theirs is just large particles because they don't disclose anything about the existence of any of the small particles. But the specification says that what's effective is the micronized step. The preferred embodiment on the particle size, according to the applicant, is the submicron. But it discloses that both can be part of the nutritional supplement. Are non-preferred embodiments set out? There are, well, yes, in the sense that it discloses a nutritional supplement that is both the large particle sizes and the small particle sizes. But this was a divisional. It seems to me the other disclosures are 0.2 microns. Look at every one of the examples and they relate either to 1.0 or 0.2. And let me quote for you what you know full well, what was stated in the prosecution. Nowhere in the art does the examiner point to a teaching or suggestion of beta-1,3-heat-extract-glucan having a fine particle size, and more particularly a particle size of 1.0 or 0.2 or less. I mean, that really sets out what your invention is in contradistinction to the prior option. What the applicant didn't say and what the court tried to impose into the patent is an exclusive 1.0. What the applicant said was it doesn't teach the small particles. And that's all the applicant ever said. What was unique about this invention was the small particles and the possibility of a combination with a large particle. If the court, and keep in mind, the evidence that they contain a submicron particle, it's actually in the district court's order, it's in their admissions, it's in their communication with their attorneys. The term having, given this specification, should be open. Because the specification discloses both can be there. This is not a case, as this court typically sees, where there's one preferred embodiment and we're trying to argue about something that doesn't appear in the specification. The combination of both. What about Claim 2, which says the composition of Claim 1 having a particle size of 0.2 microns or less? Given that it's referring to the composition, it seems clear to me that everything in Claim 2 has to be 0.2 microns or less, not just a single particle or two. Well, keep in mind, their product doesn't just have a single particle or two. According to the declaration, 98.6% of the glucan particles in the accused products are greater than 4 microns. So that leaves only 1.4% of the glucans in the accused products that are just less than 4. It's a big distance between 4 and 1, too. That's their view of the evidence on the test. I understand. It's our appeal of a determination of summary judgment. From our perspective, it doesn't matter if it's 12% that falls in the 1.0 micron or a smaller amount. Claim 2 is the dependent claim where it's now the clause that's being interpreted as about 1.0 micron now drops down to a 0.2. And the expert's testimony showed that it got down to 0.028. But for the purposes of this appeal, Claim 1 is sufficient to reverse and find judgment. We're not focused on trying to obtain infringement of Claim 2. The district court construed the term having. But given that Claim 2 clearly pertains to every particle contained within the composition being at 0.2, why doesn't that likewise imply that Claim 1 is talking about the entire composition? I disagree with your premise. I don't think Claim 2 is talking about every particle size being about 0.2. It's the composition of Claim 1 having a particle size of about 0.2 microns or less. The composition, that whole ball of wax. That would be the composition containing. It doesn't say the composition containing. It says the composition of Claim 1. So in Claim 1 was, according to our view, a nutritional supplement, which is a combination of things. Claim 2 says that claim where a particle size is about 0.02, 0.0, 0.2 or less. The dependent claim adds a further limitation that the particle size is even smaller than in Claim 1. Not suggesting that everything that existed in Claim 1 is that smaller particle size. The specification discloses a nutritional supplement with both larger particle sizes and smaller particle sizes. That's the correct construction. Any more questions? Okay, thank you Mr. Schriever. We will take the case of your solution.